## MIRIAM FERAN *vs.* JOHN F. RUDOLPHSEN.

A husband is liable upon a contract made by his wife in the prosecution of business on her separate account under the Gen. Sts. *c.* 108, §§ 3, 5, if neither of them has filed a certificate under the St. of 1862, *c.* 198, whether or not the person contracting with the wife did so upon her sole and exclusive credit.

CONTRACT on an account annexed for services rendered as a school-teacher from September 23, 1867, to June 29, 1868. Writ dated February 28, 1870. The answer denied that the plaintiff rendered services for the defendant or by his request, and that he ever promised to pay for them, or in any way became liable for them ; and alleged that, if such services were rendered, it was upon the sole request and credit of the defendant's wife, and

while she, as the plaintiff knew, was doing business on her sep-arate account, without the defendant's consent and against his wishes and directions.

At the trial in the superior court, before *Brigham*, C. J., the plaintiff and the defendant were the only witnesses, and their testimony tended to show that the defendant's wife kept a private school, "on her own account," in the defendant's dwelling-house in Boston, and that the services sued for were rendered in the school.

The plaintiff testified that the defendant's wife published the following advertisement concerning the school; and that the de-fendant gave instruction in music to the pupils in the school-room : "French and English School. Madame Lafitte Rudolph-sen (from Paris) will open a school for masters and misses from five to ten years of age, at her residence, No. 13 Decatur Street, September 23, 1867. The usual English branches will be taught by a competent English teacher, who has been engaged for that purpose. Instruction in the rudiments of music, in vocal culture and solfeggio, will be given by Professor *J. F.* Rudolphsen, with-out extra charge." The defendant testified that he never author-ized such an advertisement, or gave any such instruction.

The plaintiff admitted "that she made her contract exclusively with the wife of the defendant; that the wife promised to pay her; that she did not then know, and had not then seen the de-fendant; that she expected and understood that she was to look to the defendant's wife only for her pay, and was not to look to the defendant for it; that the wife had herself made all the pay-ments she had received on account of said services; and that since the services were completed she had several times asked the de-fendant's wife to pay her, and had never at any time requested payment of the defendant, or sent him any bill for her services, or even at any time spoken to him about her pay, or made any claim whatever upon the defendant;" and there was no evidence tending to qualify any of these admissions. But the plaintiff con-tended that the defendant was liable to her, by reason of the fact that no certificate of the wife's business was ever filed in the office of the city clerk, in conformity with the St. of 1862, *c.* 198.

The judge instructed the jury " that if the defendant's wife, the defendant objecting, entered into a sole and separate business, and the plaintiff made a contract with the defendant's wife in relation to that separate business, with notice that the defendant objected to such separate business, and in making such contract with the wife looked to her for the fulfilment of the same, she could not recover against the husband." The defendant requested him to instruct them further, " that if the contract was made with the defendant's wife only, and upon the sole and exclusive credit of the wife, the defendant would not be liable, although the certificate referred to had not been filed ; and that the liability of the husband might be released or waived expressly by the plaintiff, or by her acts and conduct, implying that she would not look to the defendant for her pay." But the judge declined to give the additional instructions thus requested. The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*A. B. Coffin*, for the defendant.

*J. D. Fallon*, for the plaintiff.

AMES, J. The instructions requested by the defendant were not appropriate to the present state of the law of this Commonwealth in relation to the rights and liabilities of husband and wife, and were therefore properly refused.

Under the Gen. Sts. *c.* 108, §§ 3, 5, a married woman might carry on any trade or business in the same manner as if she were sole ; and her contracts in such business were made binding upon herself and her separate property, and not binding upon her husband and his property. The question of fact, whether the contract and the business should be held to be his or hers, might be, and often was, embarrassing and complicated ; and the legislature found it advisable to simplify the matter, in the mode pointed out by the St. of 1862, *c.* 198. According to that statute, the right of any married woman to do business on her own separate account remains unimpaired ; but in order to secure the property employed in such business against the risk of being attached by creditors of her husband, she is required to file a certificate with the town or city clerk, giving the particulars required by the statute. On filing such a certificate, she protects her stock in trade from that

risk, and relieves her husband from all liability on her contracts. On his part, he is bound, if she should neglect that precaution, to file such a certificate himself; and if no such certificate be filed, "the husband shall be liable upon all contracts lawfully made in the prosecution of such business," that is, the wife's separate business, "in the same manner and to the same extent as if the same had been made by himself."

The only interpretation which can be given to this statute is, that the contracts of the wife in relation to her own separate business are to be considered as binding upon the husband, unless either she or he shall have fulfilled a prescribed and not very onerous condition. It will be of no avail to prove that she was not acting as his agent, or with his consent, but that the contract was her own, in relation to her separate business and upon her exclusive credit. The defendant's responsibility became fixed, in this case, by the failure to file the certificate. He has failed to fulfil the condition without which it was impossible for him to make any effectual disclaimer of the statutory liability. The law has established a rule on this subject, to which he has not conformed. The case presents no evidence of an express waiver, by the plaintiff, of her right to look to the husband for the debt; and none can be implied from the evidence reported, without entire disregard of the statute. The instructions to the jury having been quite as favorable to the defendant as he could properly ask, his *Exceptions are overruled.*

---

### THOMAS SULLIVAN *vs.* MICHAEL SULLIVAN.

A wife is not a competent attesting witness to a will which contains a devise to her husband.

GRAY, J. This is an appeal from a decree of Mr. Justice Wells, by which a decree of the probate court, allowing as the will of Margaret Sullivan an instrument which contained a devise to Thomas Sullivan, and to which his wife was one of the three attesting witnesses, was reversed; and the only question is whether upon these facts she was a competent attesting witness to the will.

By the law of this Commonwealth, a will must be attested by three competent witnesses, that is to say, witnesses who at the time of the attestation would be competent by the rules of the common law to testify concerning the subject matter. *Hawes* v. *Humphrey*, 9 Pick. 350. Rev. Sts. *c.* 62, § 6, and commissioners' note. Gen. Sts. *c.* 92, § 6. *Sparhawk* v. *Sparhawk*, 10 Allen, 155, 156. And "all beneficial devises, legacies and gifts, made or given in any will to a subscribing witness thereto, shall be wholly void, unless there are three other competent witnesses to the same." Gen. Sts. *c.* 92, § 10.

It is admitted that a wife cannot be deemed a competent witness to a will containing a valid devise to her husband. But it is contended that, within the reason and effect of the section last quoted, a devise to her husband is a beneficial devise to her, and is therefore void, leaving her a competent attesting witness to the will, and the will itself valid in all other respects. And this position, though doubted by a majority of the supreme court of Connecticut in *Fortune* v. *Buck*, 23 Conn. 1, is supported by earlier decisions in New York and Maine. *Jackson* v. *Woods*, 1 Johns. Cas. 163. *Jackson* v. *Durland*, 2 Johns. Cas. 314. *Winslow* v. *Kimball*, 25 Maine, 493.

But with great respect for the learning and ability of the courts which made those decisions, and after carefully weighing the arguments in support of the construction contended for, we are unanimously of opinion that it is founded rather upon a conjecture of the unexpressed intent of the legislature, or a consideration of what they might wisely have enacted, than upon a sound judicial exposition of the statute by which their intent has been manifested. The only devises which the statute declares to be void are beneficial devises to a subscribing witness. It does not avoid even a devise to a subscribing witness, which gives him no beneficial interest, as, for instance, a devise to an executor, for the exclusive benefit of other persons. *Wyman* v. *Symmes*, 10 Allen, 153. 1 Jarman on Wills, 65. It does not avoid any devise to and for the benefit of any person other than a subscribing witness, even if a subscribing witness would incidentally take some benefit from the devise. In order to maintain the position contended for, it would

be necessary to declare void, not merely the interest which the wife, who was a subscribing witness, would take, by way of dower or otherwise, in the property devised to her husband, but also the whole devise to and for the benefit of the husband himself, who was not a subscribing witness, and whose estate the statute does not assume to reach.

Our conclusion is fortified by a consideration of the history of the legislation upon this subject in England and in this Commonwealth.

The English statute of frauds required wills devising lands to be attested and subscribed in the presence of the devisor by three or four credible witnesses. St. 29 Car. II. *c.* 3, § 5. And that provision was reënacted here in the first year of the Province. Prov. St. 4 W. & M. (1692–3,) *c.* 15, § 3; 1 Mass. Prov. Laws, (State ed.) 46; Anc. Chart. 235.

In *Holdfast* v. *Dowsing*, 2 Stra. 1253, where a testator charged all his estate, real and personal, with legacies to one of the subscribing witnesses and to his wife, and with an annuity to the wife, the court of king's bench held that the statute of frauds certainly meant that the " credible witnesses " should not be such as claimed a benefit by the will ; and that, even if the tender to the husband, at the trial, of the amount of the two legacies, would remove the objection on that ground, (which the court thought it would not,) yet the charge upon the real estate of the annuity to the wife made the husband an incompetent witness. Although the doctrine as to the legacies has been since controverted in England, upon the ground that the competency of the witnesses was to be determined at the time of the proof, and not at that of the execution of the will, the incompetency of either husband or wife to be a witness to a devise to the other, which the witness could not release, has never been doubted. *Windham* v. *Chetwynd*, 1 Burr. 414, 424; *S. C.* 1 W. Bl. 95, 100. Bul. N. P. 265. The case of *Holdfast* v. *Dowsing* was taken by writ of error to the exchequer chamber, and after argument and before judgment there was compromised by the parties ; and gave occasion to the St. of 25 Geo. II. *c.* 6. 1 W. Bl. 8. 1 Ves. Sen. 503. 2 Bl. Com. 377. The reason of this, as stated by Sir William Black

stone in his Commentaries, was, that the determination in the king's bench " alarmed many purchasers and creditors, and threatened to shake most of the titles in the kingdom that depended upon devises by will; " because it " would not allow any legatee, nor by consequence a creditor, where the legacies were charged on the real estate, to be a competent witness to the devise."

The St. of 25 Geo. II. *c.* 6, accordingly provided, in § 3, that to the execution of wills already made any attesting witness to whom any legacy was given, whether charged upon lands or not, might be admitted as a witness, upon payment, release or tender of his legacy; and, by §§ 1, 2, that in future wills any attesting witness " to whom any beneficial devise, legacy, estate, interest, gift or appointment of or affecting any real or personal estate " (except charges on lands for payment of debts) " shall be thereby given or made," should be admitted as a witness to the will, within the intent of the statute of frauds, and " such devise, legacy, estate, interest, gift or appointment shall, so far only as concerned such person attesting the execution of such will, or any person claiming under him, be utterly null and void ; " and that charges of debts upon lands should not make any creditor an incompetent witness. All these provisions were reenacted in our St. of 1783, *c.* 24, §§ 11–13 ; and the provision of St. 25 Geo. II. *c.* 6, § 3, and St. 1783, *c.* 24, § 13, for removing the interest of a witness by payment, release or tender, was omitted in the revision of our statutes in 1836. But neither the St. of 25 Geo. II., nor the St. of 1783, contained any provision as to devises to the wife or husband of an attesting witness, notwithstanding the general attention which had been called to the subject by the case of *Holdfast* v. *Dowsing.*

In 1822, a case was brought before the court of king's bench, in which a testator devised, upon the determination of an estate for life, an estate in fee to the wife of one of the attesting witnesses, and the wife died before the determination of the life estate. It was argued, that, if before the St. of Geo. II. the husband would have been an incompetent witness, the clear intent of that statute was to restore the competency of the attesting witness in all cases of benefit arising to him under the will, and to avoid the

*N. C. Berry*, for the appellee.

*L. M. Child*, for the appellant.