MARY J. WHEELER *vs.* FREDERICK O. RAYMOND.

Essex. Nov. 4, 1880. — Jan. 17, 1881. ENDICOTT, J., absent.

If a married woman, owning separate property, permits her husband to use it in a business carried on by him, she is not "doing business on her separate account," within the meaning of the St. of 1862, *c.* 198, so as to make it necessary for her to file the certificate required by that statute, in order to exempt the property from liability for her husband's debts.

If an officer attaches personal property on a writ in favor of A., and then makes a second attachment of the same property on a writ in favor of B., and is afterwards requested by A. to have the property appraised and sold, by a written request signed by A., "by B., his attorney," B. being the same person who was plaintiff in the second action, B. must be deemed to have waived the notice required by the Gen. Sts. *c.* 123, § 74, to be given by the officer; and the failure of the officer to give such notice does not render him a trespasser *ab initio,* either as to B. or as to the owner of the attached property.

The appraisement of several articles of attached property, under the Gen. Sts. *c.* 123, § 77, is not invalid because the appraisers do not state in their certificate the separate value of each article in the schedule prepared by the attaching officer, but appraise the whole property at a round sum.

If an officer, who has attached several articles of personal property, which have been appraised, under the Gen. Sts. *c.* 123, § 77, at a round sum, dissolves the attachment on one of the articles before the sale, it does not render the sale of the remaining articles illegal, if the debtor did not offer to deposit the money or give the bond permitted by the Gen. Sts. *c.* 123, § 78, to prevent the sale.

The fact that an officer, who has attached several articles of personal property, which have been appraised under the Gen. Sts. *c.* 123, § 77, sells more than enough to realize the amount called for by his precept, will not render the sale illegal, if the last article sold was indivisible, and the requisite amount has not been realized previous to its sale.

The charging by an officer of unlawful fees upon the writ on which he attaches personal property does not avoid a sale of the property, or make him a trespasser *ab initio* as to the debtor.

If, after the sale of attached property, the officer illegally attaches the funds in his hands on a writ in favor of another creditor, it will not vitiate the sale.

MORTON, J. This is an action of tort for the conversion of certain articles of personal property. It appeared at the trial that the plaintiff, who is a married woman, bought a portion of the property, of third persons, with her own money, in good faith; and that the remainder was conveyed to her by her husband. The defence was that the defendant, who is a deputy sheriff, rightfully attached the property upon several writs against the husband of the plaintiff. The jury returned a verdict for the value of the property which she had bought of third persons,

which verdict imports a finding that the conveyance to her by her husband was fraudulent as to his creditors. Both parties alleged exceptions.

It appearing that the plaintiff had not filed a certificate according to the provisions of the St. of 1862, *c.* 198, the defendant requested the court to rule, as matter of law, that the neglect to file such certificate "was a bar to her recovery in this case, and that the property, although owned by her, was liable to be attached by her husband's creditors." The court declined to give this ruling, but left it to the jury to determine whether the business of the livery stable, in which the property was used, was the business of the wife or of the husband, with instructions that, if the business was the husband's and the property was the wife's, she could recover. The statute provides that any married woman "doing business on her separate account" shall file the required certificate in order to exempt her property from liability for the debts of her husband. The language of the statute is broad, but it is clear that it was not intended to apply to every use which a married woman might make of her property. *Proper* v. *Cobb*, 104 Mass. 589. If a married woman carries on a farm in the usual way in which farms are carried on, buying the stock and materials and selling the surplus produce, she is within the statute. *Snow* v. *Sheldon*, 126 Mass. 332. But if a married woman, owning a farm, leases it for a term of years, it seems to us that this would not be "doing business" within the contemplation of the statute. Suppose she owns a furnished house, would a lease of the house and furniture bring her within the statute? Or, to use an illustration more nearly like the case before us, suppose she owns a horse and carriage, or horses and carriages, and lets them to a livery-stable keeper not her husband, is she "doing business" within the statute? If so, what business? Not that of keeping a livery stable, for that business is carried on exclusively by the hirer. In a certain sense, every act of buying, selling, investing or changing her property is doing business; but this is not the sense intended by the statute. It seems to us that, in the cases we have supposed, the acts of the married woman are rather in the nature of investments of her property than that of carrying on a business as intended by the statute.

In the case at bar, the jury have found, under instructions not excepted to, that the husband, and not the wife, was carrying on the livery stable. It appeared that the property of the wife, being a number of horses and carriages, was used by the husband in carrying on the business, for the use of which he agreed to pay the plaintiff one half of the profits of the business. But this agreement, being between husband and wife, was entirely null and void. The case presented, then, is one where a wife, owning separate property, permits her husband to use it in carrying on his business. We are of opinion that this cannot fairly be deemed "doing business on her separate account" within the statute, so as to require her to file a certificate in order to exempt the property from liability for her husband's debts. If it was done with the fraudulent purpose of deceiving the public and giving the husband a fictitious credit, perhaps she might be estopped by the fraud from claiming the property; but no such point is raised in this case. The court, therefore, rightly refused to rule as requested by the defendant.

The plaintiff's exceptions relate to the regularity and legality of the proceedings of the defendant under his attachments, the court having ruled that the attachments were valid and constituted a defence as to such of the property as was claimed by the plaintiff by a title fraudulent as against creditors of her husband. If the proceedings of the defendant under the attachments were so far illegal as to make him a trespasser *ab initio*, he cannot justify under his process, and the plaintiff would be entitled to a verdict for the value of all the property claimed by her. *McGough* v. *Wellington*, 6 Allen, 505.

The defendant, on July 28, 1873, attached the property on a writ in favor of Byron Kimball and another, in which he was directed to attach goods or estate to the value of one thousand dollars; on the first day of August following, he made a second attachment on a writ in favor of Joseph K. Jenness, in which he was directed to attach property to the value of one hundred dollars; and on the fourth day of August, he was requested by the plaintiffs in the first suit to have the property appraised and sold under the statute, by a written request signed by said plaintiffs "by J. K. Jenness, their attorney," being the same Jenness who was plaintiff in the second suit.

The first objection made by the plaintiff to the proceedings of the officer is, that he failed to give notice to the second attaching creditor under the Gen. Sts. *c.* 123, § 74. Notice to the second attaching creditor is for his benefit, and may be waived by him. If there had been an entire failure to give notice to Jenness, it would not affect the plaintiff's rights, and such failure would not make the officer a trespasser *ab initio* as to her. *Wolcott* v. *Root*, 2 Allen, 194. But the return sufficiently shows that Jenness had notice. He signed the request for a sale, as stated above, and took part in the proceedings. He had actual notice; and, under these circumstances, a formal notice would be a useless and idle ceremony, which he must be deemed to have waived, so that even as to him the officer would not be a trespasser *ab initio*.

The second objection of the plaintiff is, that there was not a legal appraisement, because the appraisers do not state in their return or certificate the separate value of each article of property in the schedule prepared by the officer. The appraisers certify that "we have examined the property contained in the schedule annexed," and "we have appraised the same according to our best skill and judgment, estimating them at the value thereof in money, at eleven hundred and fifty-four dollars." By the statutes, the officer is required to prepare a schedule of the goods for the appraisers, so that they may know what they are to appraise. It would be better to state in their certificate the value of each separate article in the schedule, so far as practicable, and the failure to do so may in some cases cause embarrassment. But the statute merely requires them "to appraise the same, according to the best of their skill and judgment, at the value thereof in money." There are no provisions as to their mode of proceedings, or the form of their certificate. We are of opinion that their return in this case was not so defective as to be invalid, and to avoid the sale, and render the officer a trespasser *ab initio*. Gen. Sts. *c.* 123, §§ 74–77.

The third objection to the officer's proceedings is, that, on the day of the sale, he dissolved the attachment on one of the harnesses attached and appraised. The mere act of dissolving the attachment on one article would not make the sale of the remainder of the property invalid, it being an act in favor of the

debtor which could not prejudice him or any one claiming under him. The plaintiff's argument is, that in this case the dissolution of the attachment of one article prevented the debtor from depositing the money or giving the bond permitted by the Gen. Sts. c. 123, § 78, and thus stopping the sale of his goods. This section provides that the goods appraised shall be delivered to the debtor, if he requires it, upon his depositing with the attaching officer the appraised value thereof in money, or giving bond to him in a sufficient penalty and with two sufficient sureties, conditioned to pay to him the appraised value of the goods or to satisfy the judgments which may be recovered in the suits in which the goods are attached. It is true that, if the debtor had come forward and offered to deposit the money, or to give a bond, to prevent the sale, it would have been impossible to have ascertained the amount he should deposit, or for which he should give a bond, and the result might have been that the officer could not have proceeded to sell without a new appraisal. If the article released from attachment had been separately appraised, no such difficulty would exist, and this illustrates the embarrassment that might arise from the form in which the appraisers made their certificate in this case. But the debtor did not require the goods to be delivered to him, and offer to deposit the money or give the bond; and the argument shows merely that a contingency might have arisen in which the sale might have been illegal. But the contingency did not arise. The mere act of dissolving the attachment on the harness at the time of the sale could not, under the circumstances, be prejudicial to the debtor, and in our judgment did not render the sale of the remainder of the goods illegal.

The fourth objection is, that the officer sold more than he had a right to sell, as his precepts called for attachments to the amount of $1100, and the gross amount of his sales was $1163. A sufficient answer to this is, that the last article sold was a horse, which brought $120. The officer was obliged to proceed with the sale until he had realized enough to meet the calls of his writs; and, as the last article to be sold was indivisible, the fact that it brought more than enough to make up the balance called for by the precepts would not render the sale illegal.

The fifth objection, that the officer charged unlawful fees upon the writs on which the attachments were made, is untenable.

If this is true in fact, which we do not decide, it does not avoid the sale, or make him a trespasser *ab initio* as to this plaintiff. *Holmes* v. *Hall*, 4 Met. 419. *Stevens* v. *Roberts*, 121 Mass. 555.

The sixth objection, that after the sale the officer attached the funds in his hands on two other writs in a manner which was illegal, is equally untenable. The attachments in the last suits were acts of the officer, after the sale, in the interests of other creditors, over which the creditors in the first suits had no control, and, if irregular and illegal, would not vitiate the sale.

Upon the whole, therefore, we are of opinion that the plaintiff has not shown any such irregularity or illegality in the proceedings of the defendant, in attaching and selling the goods in question, as makes him a trespasser *ab initio*.

*Exceptions overruled.*

*S. B. Ives, Jr.*, (*J. P. Jones* with him,) for the plaintiff.
*H. Carter*, for the defendant.