CATHERINE L. DESMOND *vs.* BARTHOLOMEW M. YOUNG.

PATRICK H. DESMOND *vs.* SAME.

Middlesex.    November 8, 1898. — March 4, 1899.

Present: FIELD, C. J., HOLMES, MORTON, & LATHROP, JJ.

*Husband and Wife — Ownership and Carrying on of Business — Agency —
Certificate — Attachment — Exemption.*

Where an entire business is owned by a married woman, and carried on by her
husband with her assent, he must be considered her agent; and if she has failed
to file the certificate required by Pub. Sts. c. 147, § 11, when a married woman
does business on her separate account, the stock in trade is subject to attach-
ment by his creditors.

The *tools and implements* used by a person engaged in the business of buying and
selling merchandise are not exempt from being taken on execution, under Pub.
Sts. c. 171, § 34, cl. 5.

TWO ACTIONS, the first being replevin of certain personal
property, consisting of the stock in trade in a grocery and meat
market in Malden, and the second being tort for the conversion
of other articles of property used in the business. Writs dated
March 6, 1897. The cases were tried together in the Superior
Court, before *Fessenden*, J., who directed the jury to return a
verdict for the defendant in each case ; and the plaintiffs alleged
exceptions. The facts appear in the opinion.

*A. V. Lynde & W. P. Harding*, for the plaintiffs, submitted
the case on a brief.

*E. R. Thayer*, (*D. A. Ellis* with him,) for the defendant.

LATHROP, J. 1. The question in the first case is whether,
on the evidence, the business was carried on by the plaintiff on
her separate account. If this question is answered in the affirm-
ative, then the stock in trade was liable to be attached by her
husband's creditors, as no certificate was filed by her as required
by the Pub. Sts. c. 147, § 11. According to the testimony given
by the plaintiff and her witnesses, she had the absolute owner-
ship of the contents of the shop and its earnings, while the
business was ostensibly carried on in the name of her husband.
One McMahon testified that, after the conveyance by him to the
plaintiff, her husband "remained in the store and did business

for Mrs. Desmond up to the time of the trial; that he continued
to act for Mrs. Desmond in the store; that at the time of the
levy, on March 6, 1897, Mrs. Desmond carried on the business
in the store; that Desmond did the actual work in the store and
Mrs. Desmond took part in it; that Desmond bought the goods
for it; and that Desmond and Mrs. Desmond both sold and de-
livered goods from the store."

Desmond testified that from 1888 to 1891 he ran the business
for McMahon; that after McMahon turned over the property to
Mrs. Desmond, he, Desmond, used his wife's money to replenish
the goods in the store, "and we sold them and paid the bills
with the money, and supported the family; that the sign over
the door was in Desmond's name, and remained so till the time
of the trial; that the goods for the store were all bought in his
name, and all bills were made out to him; that in selling the
goods the bill-heads were in his name; that this was all the
same when McMahon held the property; that no bills were in
Mrs. Desmond's name; that Mrs. Desmond had nothing to do
with the business except furnishing the money, and sometimes
coming down and helping him a little in putting up orders; . . .
that the stock was bought with Mrs. Desmond's money and for
her, but in his name."

Mrs. Desmond testified that she had "heard the testimony of
McMahon and her husband, and that it was correct; that she
helped her husband a great deal off and on in the store, and had
always done so; that she put up groceries, sometimes cut meat,
sold goods when her husband was not there, and sometimes,
especially Saturday evenings, was in the store with him selling
goods; that her husband did all the business; that all she did
was to help him when there was a pressure on Saturday, or at
some other times; that he bought all the goods, and carried on
the whole concern; and that she took no part in it except this
assistance."

Mrs. Desmond was the owner of the real estate where the
business was carried on, and owned the stock in trade, and had
all the capital and income. There is no evidence that her hus-
band paid any rent for the use of the shop; and we are of opin-
ion that, on the evidence, the business must be considered in
law as carried on by her, within the Pub. Sts. c. 147, § 11; and
that her husband was her agent.

The statute in question was first enacted in 1862. St. 1862, c. 198. In *Chapman* v. *Briggs*, 11 Allen, 546, it was said by Chief Justice Bigelow : " The object of the statute was to afford the means of ascertaining in which of the two persons, apparently in the possession and use of property in carrying on any kind of trade or occupation, the title is vested, so that all having occasion to transact business with either may regulate their. dealings accordingly."

In a later case it has been held that, if a married woman carries on a boarding house without filing a certificate, debts due her for board may be attached by a creditor of her husband. *Dawes* v. *Rodier*, 125 Mass. 421.

The case of *Snow* v. *Sheldon*, 126 Mass. 332, is like, in many ·respects, the case at bar. A husband conveyed a farm to his wife through a third person, but remained on the farm and managed it after the conveyance as before, and the produce of the farm was used for the support of the family. The wife did not file any certificate, and it was held that the personal property on the farm, bought by the wife and used in carrying on the business of the farm, could be attached by a creditor of the husband. See also *Feran* v. *Rudolphsen*, 106 Mass. 471.

The cases of *Proper* v. *Cobb*, 104 Mass. 589, *Wheeler* v. *Raymond*, 130 Mass. 247, and *Lockwood* v. *Corey*, 150 Mass. 82, are clearly distinguishable from the case at bar. In *Proper* v. *Cobb*, a woman before marriage bought a colt for her own use. After marriage, she bought with her separate money standing trees, and had them cut down and prepared as building material for the purpose of erecting a house, to be occupied by her and her husband, on land which she intended to purchase. It was held that she was not carrying on business within the meaning of the statute.

In *Wheeler* v. *Raymond*, a wife who permitted her husband to use in his business of keeping a livery stable three horses, two buggies, and one harness was held not to be carrying on business within the statute. It appears, however, that these articles did not constitute the entire stock in trade. The opinion speaks of the articles as " a number of horses and carriages." The number and kinds are obtained from the original papers in the case.

In *Lockwood* v. *Corey*, the purchase of a single sow, with a view to her natural increase, was held not to be doing a business within the statute.

In *Snow* v. *Sheldon*, 126 Mass. 332, it was said by Mr. Justice Ames, " There may be partial uses of land belonging to a married woman on so small and trivial a scale as not to come within the description of a separate business within the meaning of the statute." It is also true that the amount of property may be so small and trivial that it is not to be regarded as a separate business. Under one or the other of these heads the cases of *Proper* v. *Cobb*, *Wheeler* v. *Raymond*, and *Lockwood* v. *Corey* fall. Where, however, the entire business is owned by a married woman, and carried on by her husband with her assent, he must be considered her agent; and, if there is no certificate, the stock in trade is subject to attachment by his creditors. In the first case, therefore, the exceptions must be overruled.

2. In the second case the question is whether certain articles, which the plaintiff testified were bought with his own money and were necessary in carrying on his business, were exempt from being taken on execution, under the Pub. Sts. c. 171, § 34, cl. 5. It is clear that they were not exempt. This statute is intended, as said by Mr. Justice Gray, in *Wallace* v. *Bartlett*, 108 Mass. 52, " for the protection of mechanics, artisans, and handicraftsmen, and others whose manual labor and skill afford means of earning their livelihood." But it does not apply to those engaged in the business of buying and selling merchandise. The plaintiff in that case, as in the one before us, was a dealer in meats and groceries, and it was held that his tools and implements were not exempt.

The result is that in each case the entry must be,

*Exceptions overruled.*