## Bowen et al., Plaintiffs in error *versus* Burk et rex.

Though the terms of a sale be *cash*, a subsequent delivery, without payment, passes the property to the vendee, not only as against all the rest of mankind, but against the vendor himself.

In such a case, the only remedy against the vendor is an action on the contract to recover the price.

If, on a sale for *cash*, the vendee takes away the goods without payment, the vendor should immediately retake them, and may do so, when necessary, even by force. By lying by and making no complaint in a reasonable time, he consents to the absolute transfer of the property, and it is consequently complete against all the world.

A joint trespasser, if called by the opposite party, may testify against himself; therefore, a constable who made the levy, which is complained of, under an execution, may be a witness, if called on the part of the plaintiff, in the action.

From the *nisi prius* at *Philadelphia*, before Burnside, J.

This was an action of trespass, *vi et armis*, &c., by Burk and wife *vs.* Bowen, Randall Fenton, Marseilles, Levi Kenton and M'Mullin, for taking and carrying away the household furniture of Caroline K. Elmes, afterwards intermarried with the plaintiff, William E. Burk. Pleas not guilty, &c.

On the 1st of March, 1842, Abner Elmes, the father of Caroline, made a general assignment of all his property to Messrs. Hoge and Austin, for the benefit of his creditors.

The assignees filed an inventory, in which the household furniture was valued at $366.

On the 12th of September, 1842, the assignees by Wolbert, the auctioneer, sold the furniture at public auction. It was purchased for $438 57 by Oliver Brooks, for Caroline Elmes, who, without having paid for the property, got possession of it at that time, placed it in a house in the Northern Liberties, and thence kept the family together.

[Bowen et al., Plaintiffs in Error *v.* Burk et rex.]

On the 14th of September, two days after this sale, the assignees filed their account, only noting the furniture, on the back of the account, at its appraised value, $366, and taking no notice of the sale.

On the 12th of July, 1843, the defendant below, Bowen, got a judgment of $87 20 against Abner Elmes, and issued execution, and on the 13th of July levied on this furniture. Caroline, on the next day, July 14th, by her counsel, gave notice that the property was hers, and on the day after, July 15th, caused it to be paid for in the full sum of $438 57, to Wolbert, the auctioneer.

Roberts, the constable, on receiving Caroline's notice, demanded indemnity of Bowen, before proceeding further on his levy of July 13th, and on the 17th of July, Bowen gave him his own bond of indemnity in $2000 and directed him to proceed.

On further consultation and enquiry the constable required additional security, and on the 27th of July, the defendants below, Levi Kenton, Peter Marseilles and J. T. McMullen, joined the defendant Bowen in another bond of indemnity of $2000.

The constable afterwards made two other levys and sold the property, after being warned by Bowen's counsel, that the original levy would run out before the day he had fixed upon for the sale, and that Bowen would not be responsible, unless they were sold in time, upon that levy. Bowen received his money on the 12th of August, 1843, out of the proceeds of that sale.

Caroline Elmes soon after intermarried with the plaintiff Burk, who, with her, sued the defendants below in an action of trespass.

Randall Fenton, the deputy or agent of the constable, was also joined in the suit, but a *nolle prosequi* was subsequently entered as to him, and the death of Kenton, another of the defendants, suggested upon the record.

The defence set up was:

1st. That Bowen's sureties clearly were not liable in trespass.

2nd. That Caroline did not pay, but that Elmes paid for the goods if any one did, and that no one paid for them until two days after the levy of the 13th of July, the only levy for which Bowen was liable.

On the trial, Roberts the constable having been offered as a witness by the plaintiffs below to prove the transaction of sale, the defendant's counsel objected on the ground that he was responsible, being himself primarily liable. The court overruled the objection and admitted his evidence. Fenton also being called on the same side and objected to as a party, it was replied that a *nol. pros.* had been entered as to him, and his evidence was admitted by the court.

The defendants requested the Judge to charge the jury as follows:

1st. The defendants Marseilles and McMullen are not liable by having been Bowen's sureties to the constable, &c.

2d. That there is no evidence against said Marseilles and McMullen, except their being parties to said bond, and the verdict must be in their favor.

3d. That the title to the goods did not pass to the plaintiff until 15th July, 1843, when the money was paid, and that the only levy for which defendant is liable, was made on the 13th day of July, 1843.

The court answered the defendant's two first points affirmatively, and the third negatively, on the ground, that although it was true that the title to the goods did not pass to the plaintiffs below until they were paid for, on the 15th of July, 1843, yet that the defendant Bowen made himself liable for the subsequent levy by indemnifying the constable, causing his attorney to press the execution, &c. The court further charged the jury that the title of Caroline Elmes, to the furniture, did not become perfect until she had *paid for it*, and that if Bowen had *then* withdrawn his levy, which was illegal as against the assignees, and stopped there, the plaintiffs below would have had no case under the evidence.

The jury returned a verdict for plaintiffs and assessed damages, &c.

*Francis E. Brewster, Esq.*, counsel for defendants below and plaintiffs in error, assigned a number of errors, the principal of which was, that the Judge erred in refusing to instruct the jury affirmatively upon his third point of charge.

*J. Randall* and *Samuel Perkins, Esqrs.*, for plaintiffs below and defendants in error.

The opinion of the Court was delivered by

ROGERS, J.—A sale is defined to be a transmutation of property from one man to another, in consideration of some price or recompense in value. From this the consequence is deduced, that upon all sales of goods in possession, the property is changed immediately upon the making of the contract, although the actual possession may not be obtained by the vendee until the fulfilment of the stipulations; thus, if a man sells his horse for money, though he may keep him until he is paid, yet the property of the horse is in the bargainor or buyer: *Ross on Vendors*, p. 1. So where a man sells goods in possession for cash, but subsequently delivers the goods without exacting payment, the property passes to the vendee, not only as against all the rest of mankind, but as against the vendor himself. In such a case, the only remedy of the vendor is an action on the contract to recover the price. By an unqualified delivery, notwithstanding a cash sale, he relinquishes the

[Bowen et al., Plaintiffs in Error *v.* Burk et rex.]

advantage of his possession and trusts to his action on the contract. This is ruled in Leedom *vs.* Philips, 1 *Yeates* 529; and in Harris *vs.* Smith, 3 *S.* & *R.*, 20. If one sells goods for cash, as is said in Leedom *vs.* Philips, and the vendee takes them away without payment of the money, the vendor should immediately reclaim them by pursuing the party and retaking them, and this may be done, when necessary, even by force. But where he lies by and makes no complaint in a reasonable time, he consents to the absolute transfer of the property, and the contract is consequently complete against all the world. Had not these principles been lost sight of at the trial, it is plain, that the point on which the cause was made to turn, to wit: "whether the plaintiff paid for the goods before the defendant's levy," would have been totally irrelevant. The evidence puts it beyond all reasonable doubt that the property was purchased at the auctioneer's sale, for the use of the plaintiff; and further, that the goods were delivered, or at any rate, suffered to go into her possession with the assent and approbation of the assignees, the legal owners. The title, therefore, is perfect, notwithstanding the purchase money remained unpaid; the only remedy of the assignees being against her on her contract. The enquiry, therefore, which was the hinge upon which the cause was made to turn, was wholly aside the question; for whether the price was paid or not, was immaterial, as the plaintiff, notwithstanding non-payment, was the owner of the goods, and consequently the defendants were trespassers. The error into which the court was betrayed by the counsel, is an error against the plaintiff of which the defendant, as he is not injured, has no right to complain. The other parts depending on this fall with it.

The court answered the first and second points in favor of the defendants, and whether erroneous or not, is of but little consequence in the aspect the case assumes. If the defendants are injured, which is by no means clear to my mind, the remedy was by motion for a new trial.

We see no objection to the competency of either Roberts or Fenton. Whether a *nolle prosequi* was entered, as to Fenton, matters not, as a man may, if he chooses, testify against himself in a suit in which he is a party, if called by the adverse side. The objection, that Roberts the constable was primarily liable has no weight in it. He was called to testify against himself, and it was his interest to defeat the action. Besides, in trespass, all, or one, or more, of a number of joint trespassers may be sued at the pleasure of the plaintiff; and it never yet has been doubted, that where one or more are selected as the objects of the suit, the others are competent witnesses.

Judgment affirmed.