[Blackshear v. Burke.]

# Blackshear *v.* Burke.

*Bill in Equity by Trustee, for Sale and Distribution of Trust Property; Petition by Intervening Creditor.*

| 74 | 239 |
| 97 | 611 |
| 74 | 239 |
| 104 | 113 |
| 74 | 239 |
| 128 | 665 |
| 74 | 239 |
| 136 | 375 |
| 74 | 239 |
| 143 | 626 |

1. *Sale of goods, with delivery of possession; rights of parties.*—On a sale of goods, even for cash, if the possession is delivered unconditionally to the purchaser, without any fraud on his part, the title at once vests in him, although the purchase-money is not paid; and the creditor can assert no lien on the goods, for the unpaid purchase-money.

2. *Waiver of tort in unauthorized sale.*—When a person's goods have been wrongfully sold or converted, he may waive the tort, and recover the money received for them; but a creditor, or any other person, can not make this election for him.

3. *Contracts of trustees; remedy of creditors.*—A trustee, express or implied, can not, in the absence of power specially conferred on him, impose a liability upon the trust estate by any contract or engagement he may make; and if he makes a contract which is beneficial to the estate, the person with whom he contracts has no equity to charge the estate, unless the trustee is insolvent, as shown by the exhaustion of legal remedies against him, and the trust estate is indebted to him.

APPEAL from the Chancery Court of Conecuh.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed, on the 19th April, 1882, by Uriah Blackshear, against James F. Dugan and his several infant children by his deceased wife, Nancy F. Dugan; and sought to have a receiver appointed to take possession of certain property then in the possession of said Dugan, to preserve it from waste pending the suit, and to have it sold, if necessary, in order to effect an equitable division among the children, as beneficiaries under a deed of trust executed by the said Dugan, in which the complainant was appointed the trustee. The deed, a copy of which was made an exhibit to the bill, was dated February, 1877; recited as its consideration, besides natural love and affection, that the grantor had used "all of the separate estate of" his wife in the payment of his debts and carrying on his business; and described the property conveyed, and the trusts intended, in these words: "My storehouse and lot, and dwelling-house and lot, in the town of Brewton in said county; also, my entire stock of goods, wares and merchandise, my books, debts, notes and accounts, of every description; *in trust*, to and for the sole and separate use and benefit of my beloved wife, Nancy F. Dugan, during her life, free and exempt from the debts, contracts, control or incum-

brances of myself, or of any future husband she may have; but the said property hereby granted, with the rents and profits thereof, shall be and remain to the sole and separate use, benefit and behoof of my said wife; and upon her demise, the same to be distributed and divided among such of my children by her as may be surviving at her death, or their issue, in the event any of them shall have died before her, leaving issue."

The bill alleged that, immediately after the execution of this deed, Mrs. Dugan took possession of the property conveyed, and conducted the business in her own name, selling goods, and replenishing her stock, until her death, which occurred in March, 1879 ; that after her death, her said husband, James F., took possession of all the property, and conducted the business of the store in his own name, selling and buying goods, collecting the outstanding accounts, contracting debts, and wasting and misappropriating the assets; and therefore prayed the appointment of a receiver to take possession of the property, carry on the business, and collect the outstanding debts, until the property might be sold, if necessary, under the decree of the court, for equitable distribution among the infant beneficiaries. A receiver was appointed on the filing of the bill,—whether by the register or by the chancellor is not shown by the record,— and he took possession of the property, sold goods from the store, and collected debts. An answer to the bill was filed by said James F. Dugan, in which he incorporated a demurrer to the bill; but neither the answer, nor the demurrer, is material to the case as presented on this appeal.

At this stage of the proceedings, a petition was filed in the cause by Peter Burke, a merchant doing business in Mobile, in which he alleged that the trustee, after accepting the trust under the deed, permitted the said James F. Dugan to continue in possession of the stock of goods, and to carry on the business in the name of his wife; that said Dugan, while so carrying on the business in the name of his wife, bought goods from the petitioner, from time to time, which were added to the stock in the store, and sold from time to time with other goods; that when the bill was filed, in May, 1882, a balance of $129.75 was due to the petitioner, on account of goods sold to said Dugan between November, 1881, and March, 1882; that these goods, or the greater part of them, were in the store when the receiver took charge of it, and were sold by him, and converted into money, and that said Dugan was insolvent. Dugan, the receiver, and the complainant in the bill, were made defendants to this petition; and the prayer was, that an account might be taken to ascertain the amount due to the complainant, that a lien be declared in his favor on the moneys in the hands of the receiver, and that he paid out of the moneys as the court might

[Blackshear v. Burke.]

direct. An answer to the petition was filed by the complainant, alleging that James F. Dugan had no interest in the business after the execution of the deed, but acted only as clerk for his wife; and while admitting that said Dugan "may have bought the goods as stated from the petitioner," he alleged that "they were purchased in the name of said Nancy F. Dugan after her death, of which fact said petitioner was informed before he delivered said goods to said James F. Dugan." He also demurred to the petition, "because it contains no equity," and "because it shows on its face that the complainant has a full, complete, and adequate remedy at law." An answer to the petition was also filed by the guardian *ad litem* of the infant defendants, denying its allegations, and requiring strict proof thereof.

An agreement of record was entered into, between the solicitors of the petitioner and the complainant in the bill, in these words: "It is agreed that a greater portion of the goods set forth in the account appended to the petition was received by the receiver in this cause, and that the remaining portion was sold by said James F. Dugan, and that he received the proceeds of the sale of said goods so sold by him in the management and control of said business. It is agreed, also, that the facts stated in the petition are true, except as controverted in the answer; and that all of the facts stated in the answer are true, so far as this proceeding is concerned." The cause being submitted for decision, on the bill and answers, petition and answer thereto, and this agreement, the chancellor rendered a decree, ordering the receiver to pay to the petitioner, out of the moneys in his hands arising from the sale of goods in the store, the balance due on account, $129.75, with interest. From this order, or decree, the complainant in the bill appeals, and here assigns it as error.

There was a joinder in error by the appellee, and he also moved to dismiss the appeal, on the ground that an appeal would not lie from the order; and on the part of the appellant an application for a *mandamus* was submitted, in the event the appeal was dismissed.

FARNHAM & RABB, and J. M. WHITEHEAD, for appellant, cited *Daily v. Daily*, 66 Ala. 266; *Vanderveer v. Ware*, 65 Ala. 606; *Dickinson v. Conniff*, 65 Ala. 581; *Steele v. Steele*, 64 Ala. 438; 1 Brick. Digest, 639, § 3; *Ib.* 731, §§ 1343–4; *Abrams v. Hall*, 59 Ala. 386; *Flewellen v. Crane*, 58 Ala. 627.

W. E. RICHARDSON, and JNO. S. JEMISON, *contra*, cited *Coopwood v. Wallace*, 12 Ala. 796; *Charles v. Dubose*, 29 Ala. 371; *Meyers v. Meyers*, 2 McCord's Ch. 214, or 16 Amer. Dec. 648;

16

1 Wait's Ac. and Defenses, 29 ; *Wiswall v. Stewart & Easton*, 32 Ala. 433 ; *Smith v. Harrison*, 33 Ala. 706 ; 1 Perry on Trusts, § 246 ; 2 *Ib.* §§ 813, 907.

BRICKELL, C. J.—The case has been very fully argued upon its merits, and can, without injury to either of the parties in interest, be determined finally without the expression of an opinion upon the regularity or propriety of the petition which was entertained in the Court of Chancery ; or without deciding whether the order or decree of the chancellor is of the character which will support an appeal, or whether the remedy of the party aggrieved by it is *mandamus* for its vacation. If the latter is the appropriate remedy, an application for the writ is pending, and a dismissal of the appeal would result in the granting of the writ, as we are of opinion the order or decree is manifestly erroneous.

We can see no ground, legal or equitable, upon which the decree of the chancellor can be supported. There was an absolute, unconditional sale of the goods to Dugan, accompanied by a delivery of possession. The title vested in the purchaser, and from the moment of delivery of possession the relation of buyer and seller was changed into that of debtor and creditor. This is true, even where there is a sale of goods for cash ; if the seller, without demanding the purchase-money, not being induced by the fraud of the buyer, delivers the goods to him unconditionally, the title vests in the buyer, and he becomes the absolute owner. There was no lien upon the goods for the payment of the price ; for we are not aware that a lien for the purchase-money of chattels, with the possession of which the vendor parts absolutely and unconditionally, has ever been implied or recognized.—1 Lead. Cas. Eq. 502 ; *Jones v. Bird*, 8 Leigh, 510 ; *Beam v. Blanton*, 3 Ired. Eq. 59 ; *Lupin v. Marie*, 6 Wendell, 77.

The goods may have been wrongfully sold by the receiver, and the proceeds of sale may have increased the funds in his hands, which are under the control, and subject to the disposition of the court. If this be true, the wrong was done to Dugan ; his goods were converted into money, and he only, not a creditor for him, can elect to waive the tort and recover the money into which they have been converted.—*Lewis v. Dubose*, 29 Ala. 219.

Take the other theory, upon which it seems to be supposed that the claim of the petitioner may be maintained—that Dugan was a trustee *in invitum*, and that there had been a ratification of his purchase of the goods. The trust estate could only be made liable to the creditor trusting him, to the extent that it was indebted to him upon a final settlement of his accounts as

[Wilkinson v. Searcy.]

trustee. A trustee, express or implied, can not, in the absence of express power conferred upon him, by his contracts or engagements impose a liability upon the trust estate. If he make a contract which is beneficial to the estate, the creditor, or person with whom he contracts, has no equity to charge the estate, unless he be insolvent, which must be shown by the exhaustion of legal remedies against him, and the estate is indebted to him. In that event, a court of equity may subrogate the creditor to the right of the trustee to charge the trust estate. *Jones v. Dawson*, 19 Ala. 672; *Mulhall v. Williams*, 32 Ala. 489; *Askew v. Myrick*, 54 Ala. 30. That is not the case made by the petition.

Let the decree of the chancellor be reversed, and a decree will be here rendered dismissing the petition, at the costs of the petitioner in this court; and he will pay the costs of the petition in the Court of Chancery, to be taxed by the register.