# Neal, Morse & Co. *v.* Boggan.

*Detinue to Reclaim Goods Sold.*

1  W*aiver of right to reclaim goods sold on agreement to pay part cash.*
Where goods are sold on an agreement to pay two-thirds cash, and three several shipments of the same are made on different dates, the seller having knowledge that the goods are purchased for sale in the regular course of business, and without demanding a return of the goods, the seller waits fifteen days after the last shipment and then agrees to accept the buyers notes for the price, he has waived his right to reclaim the goods.

APPEAL from Birmingham City Court.
Tried before Hon. W. W. WILKERSON.

MOUNTJOY & TOMLINSON, for appellants, cited 1 Benj. Sales, 425; *Shines v. Steiner*, 76 Ala. 488; *Harmon v. Goetter*, 87 Ala. 325; *Hirschon v. Carney*, 98 Mass. 149; *Stone v. Perry*, 69 Me. 48; *Seed v. Lord*, 66 Me. 580; *Hemmett v. Linneman*, 49 N. Y., 399; *Russell v. Minor*, 22 Wendell, 659.

LEA & GREENE, *contra.*  No brief on file.

McCLELLAN, J.—Where personalty is sold for cash on delivery, or to be partly paid in money on delivery, or to be paid for in whole or in part with promissory notes, and the like, on delivery, the payment stipulated for, is a condition precedent to the passing of title, into the buyer, and unless it is complied with the seller may reclaim the property. 1 Benj. on Sales (Rev. Ed.) §§ 335–350; *Shines v. Steiner*, 76 Ala. 458; *Harmon v. Goetter, Weil & Co.*, 87 Ala. 325.

But even in such case if delivery is made to the purchaser without presently demanding the payment thereon required by the contract, the condition precedent is waived and the title passes.—1 Benj. on Sales, §§ 351-356; *Blackshear v. Burke*, 74 Ala. 239. Thus in *Ludom v. Phillips*, 1 Yeates, 527, the seller of a lot of sugar for cash on delivery left it in front of the buyer's store in his absence. On the same day the buyer sold it, and, two hours later, failed. It was ruled in

replevin by the seller against the sub-purchaser that the condition had been waived and title had passed to the buyer. The court said: "If one sells goods for cash, and the vendee takes them away without payment of the money, the vendor should immediately reclaim them by pursuing the party." So in *Bowen v. Burke*, 13 Pa. 146, it is said: "By an unqualified delivery, notwithstanding a cash sale, the seller relinquishes the advantage of possession and trusts to his action on the contract." In *Mackaness v. Long*, 85 Pa. 158, it is said: "Although the terms of a sale be cash, subsequent delivery without payment passes the property to the vendee, not only as against the rest of mankind, but against the vendor himself. If the vendee takes the goods away without payment, the vendor should immediately reclaim them by pursuing the party and retaking them, and this may be done, when necessary, even by force. The right of reclamation, after delivery, exists only in cases of fraud or deceit in the purchase, or in procuring the possession." And so on a sale of sugar to be paid for at delivery by note with certain endorsers, there was delivery without presently requiring the execution of the notes. The sugar was attached at the suit of a creditor of the buyer, and replevied by the seller. The jury found for plaintiff, but the court, assuming that the sale was conditional, set the verdict aside on the ground that the condition had been waived, saying: "We are of opinion that the verdict is against the evidence, for there is nothing in the case from which an intention to hold on upon the condition, can be inferred; no declaration at the time, which, though not necessary, is important, and no call for security until it was forgotten or abandoned, and perhaps never would have been recurred to if the goods had not been attached."—*Smith v. Demise*, 6 Pick. 262. Following this case, it was declared in *Smith v. Lynes*, 5 N. Y. 41, that "where there is a condition precedent attached to a contract for sale and delivery, the title does not vest in the vendee on delivery until he performs the condition, or the seller waives it. An absolute and unconditional delivery is regarded as a waiver of the condition." And to the same effect are the following cases. collated in Benjamin on Sales: *Husted v. Ingraham*, 75 N. Y. 251; *Parker v. Baxter*, 86 N. Y. 586; *Worder v. Hoover*, 51 Iowa, 491; *Haskins v. Warren*, 115 Mass. 514; *Cole v. Berry*, 42 N. J. L. 408; *Freeman v. Nichols*, 130 Mass. 250; *Thompson v. Wedge*, 50 Wis. 642; and this doctrine has been announced for this court by Brickell, C. J. in the following language: " · · · The title vested in the purchaser, and from the

[Neal, Morse & Co. v. Boggan.]

moment of delivery of possession, the relation of buyer and seller was changed into that of debtor and creditor. This is true, even where there is a sale of goods for cash; if the seller, without demanding the purchase-money, not being induced by the fraud of the buyer, delivers the goods to him unconditionally, the title vests in the buyer and he becomes the absolute owner."—*Blackshear v. Burke*, 74 Ala. 239, 242.

The evidence upon which the judge of the City Court tried this case brings it, in our opinion, clearly within this doctrine of waiver. There was a sale of a number of pieces of cloth at so much per yard for each piece. The terms of sale were two-thirds cash on delivery with a deduction of 7 per cent. off face of bill as to that part of the price, balance at 30 days with 6 per cent. off, or 60 days with 5 per cent. off, or four months net. We will concede for the argument that this was a sale for cash in part on delivery though the discount stipulated for gives plausibility to the idea that the buyer had the opinion either to pay on delivery and thereby get the benefit of the discount or to pay the whole face of the bill at four months. A part of the goods was shipped from Boston to the buyer at Birmingham, Ala., Sept. 4th, another part Sept. 18th, and the remainder October 5th, 1888; and the several consignments, we assume were received respectively soon after these dates. Each lot was accompanied by a bill showing the amount due therefor and stating the terms of sale as above. This was the only demand for payment made at the time of delivery, or indeed at all. Nothing was ever said about the title not passing or the goods not being used until the cash payment was made. The sellers were informed that the goods were wanted by the buyers to constitute the stock in trade of a merchant tailoring business which they were about to establish. They must have known that the goods were put into this business as soon as the shipments were severally received. And on October 10th they were expressly informed that the business had been opened previously to that time, the buyers on that date writing them: "Since we opened we have been doing a splendid business, and prospects are very good for a continuance of it." In this letter they asked for more time to pay the cash instalment and offered to give solvent acceptance to secure payment. The sellers waited fifteen days, during all which time the business was going on and the goods sold by them were being sold, as they had good reason to believe, before replying to this letter, and then wrote that they would accept the paper proposed by the buyer in payment, and upon its delivery

to them would receipt the bill for the goods.  It does not appear whether the bills of lading were taken in the names of sellers or buyers; but in view of the fact that the goods were delivered by the carrier to the buyers before any payment was made, the inference is a fair one that the bills were taken either in their names as consignee, or unconditionally endorsed to them.  There can, in our opinion, be no room for serious doubt on these facts that the actual delivery to the buyers was unconditional as to each consignment, for it is clear, we think, that the cash payment stipulated for, was due on each lot as received (this case being wholly unlike that relied on by appellants—*Russell v. Minor*, 22 Wend. 259, where a delivery of a *portion* of the property sold was made to the purchaser under an agreement that the *whole quantity* should be paid for on the delivery of the *residue*) and the failure of the sellers, with their knowledge that the goods were to be at once put in trade, to then insist upon payment or, payment not being presently made, to reclaim the goods, was waiver of their right to ever do so.  But even if this be not true as to the consignments severally, they were similarly remiss after the final consignment and this too with actual information that the goods were being sold by their vendee.  What their purposes in the premises were it is not material to inquire further than they were declared at the time or may be inferred from what they did.  ' It is not the secret purpose," said Colt, J. in *Wigyon v. Bowley*, 130 Mass. 252, "but the intention disclosed by the vendor's acts and declaration at the time, which governs."  After knowledge of the disposition being made of the goods by the buyers, and after being assured that the cash payment could not and would not be made, it would seem in all reason that if they had any intention to reclaim the property for condition broken—if they had not consciously waived the right to do so—they would then have taken steps to that end.  But instead of this, they waited fifteen days without doing or saying anything, and then wrote accepting the buyer's offer to secure the purchase-money by paper endorsed by certain named persons. From all this there can be no other conclusion than that reached by the city judge, that the seller's original right of reclamation for non-payment on delivery was effectually waived.  The judgment is affirmed.

Affirmed.