# Crawford v. Spraggins, Buck & Co.

### Action For Conversion of Goods.

1. *Waiver of right to reclaim goods sold on agreement to pay part cash.*—Where goods were sold on an agreement to pay one-half cash, and the balance at four months, the vendors, by accepting payments amounting to more than one-half of the price two months after delivery of the goods, waived their right to reclaim for non-payment of the cash installment upon delivery; and thereupon the title vested in the vendee.

2. *Agreement to hold goods as consignee; construction of.*—A written agreement by the owner of goods to hold them as the property of creditors, as if they had been consigned to him by them for sale on their account, and to pay to them the proceeds of the goods as they were sold, did not vest the title to the goods in the creditors, when the agreement contained no word of barter or sale, nor any stipulation as to price, and it did not appear that a satisfaction of the debt was the consideration for the agreement, nor that the debt was satisfied, and it appeared that the amount stated as the value of the goods was not their real value, but greatly in excess thereof, and had reference to the amount of the indebtedness, and that the creditors accepted the instrument as security for the payment of the debt.

3. *Lien; bona fide purchaser, without notice of.*—Where, in an action for the conversion of goods, there is evidence tending to show that the title to the goods was not in the plaintiff, but that he only had a lien thereon to secure the payment of a debt, if the jury find in accordance with this tendency of the evidence, and further find that the defendant in good faith purchased the property from a third person for value, and without notice of said lien, their verdict should be for the defendant.

APPEAL from the Circuit Court of Henry.
Tried before the Hon. J. M. CARMICHAEL.

On the submission of this case to the jury the court, at the request of the plaintiffs, gave, in writing, the general affirmative charge in their favor. The defendant excepted to this action of the court, and also excepted to the court's refusal to give the general affirmative charge in his favor, as requested by him. There were verdict and judgment for the plaintiffs. The defendant appeals, and assigns as errors said rulings of the trial court. Other material facts are stated in the opinion.

A. E. PACE, for appellant. The evidence showed that the appellees did not have legal title to the goods claimed to have been converted, but had only an equitable lien thereon.—*Ellington v. Charleston*, 51 Ala. 166; *Newlin v. McAfee*, 64 Ala. 357; *Jackson v. Rutherford*, 73 Ala. 155; *Caraway v. Wallace*, 2 Ala. 542; Jones on Chattel Mortgages, § 8.

ESPY & FARMER and H. L. MARTIN, *contra.*—The proof is uncontradicted that appellees sold the shoes in question to McEachern for one-half cash, and that McEachern refused or failed to pay the one-half cash as stipulated. Under this state of facts, the title to the shoes never passed out of appellees.—*Neal v. Boggan*, 97 Ala. 611; *Shines v. Steiner*, 76 Ala. 458; *Harmon v. Goetter, Weil & Co.*, 87 Ala. 325. Conceding, however, that the title did pass from appellees to McEachern, the instrument signed by McEachern had the effect of revesting the title in the appellees.—*Thornton v. Cook*, 97 Ala. 630.

McCLELLAN, J.—This action is prosecuted by Spraggins, Buck & Co. against W. H. Crawford for the alleged conversion by the defendant of certain goods which plaintiffs claim one McEachern held on consignment for sale as a merchant for them, and sold in bulk to the defendant in payment of a debt. Spraggins, Buck & Co. on July 14th, 1892, sold to J. O. McEachern a bill of goods amounting to $621.50. One-half this sum was to be paid in cash at the time of the sale and delivery, and the balance at four months. McEachern was a merchant, and the goods were purchased by him for resale in his mercantile business, facts known to the sellers. No part of the cash payment was made at the time of the transaction, nor for two months afterwards, Mc-

[Crawford v. Spraggins, Buck & Co.]

Eachern meantime selling the goods in the usual course of his business. One of the sellers' firm, Buck, being in the buyer's town and having in mind that McEachern had not complied with his contract to pay one-half cash, "went to see him in the month of September, 1892, about the 16th of the month, to arrange the matter, and found that he had mailed on the day before a check to the sellers for $200.00 on this account·" He then paid another $100, and had previously paid to the sellers' traveling·salesman $15, which was credited on this account, making in all $315, more than one-half of the bill, which had then been paid, and this two months before deferred payment of the other half became due. On these facts it is our opinion that Spraggins, Buck & Co. waived their right to reclaim the goods for the non-payment of the cash instalment of the purchase price by their delay in its assertion (*Neal, Morse & Co. v. Boygan*, 97 Ala. 611) ; and further that, whether they so waived this right or not, they accepted the payments made on and just prior to the 16th of September as a full compliance with the condition or stipulation for the cash payment, and thereby the unconditional and indefeasible title to the goods then in McEachern's hands was vested in him. Hence it follows that the subsequent occurrences and contract between Spraggins, Buck & Co. and McEachern in respect of such remaining goods must stand upon the same footing as if there had never been any right of reclamation in the former.

These occurrences and this contract are made to appear in the case as follows, by the testimony of Buck and the introduction of the paper : "Mr. McEachern assured me of his perfect solvency, but I was not satisfied and was in the act of instituting legal proceedings, when, after several days elapsed during which we had many interviews, Mr. McEachren and myself then and there reduced the agreement to writing, and signed the same in the presence of Mr. S. S. Booth. * * * The agreement is in words and figures as follows : 'This agreement made and concluded this, 21st day of September, 1892, between Spraggins, Buck & Co., of Baltimore, Maryland, and J. O. McEachern, of Dothan, Alabama, witnesseth that the said Spraggins, Buck & Co. consign to said J. O. McEachern a bill of shoes to the amount of five hundred and twenty-one and 50-100 dol-

lars, to be sold for them and proceeds paid over as sold by said J. O. McEachern to Spraggins, Buck & Co., and said J. O. McEachern agrees to keep same insured in full.' As to the amount of the goods returned to us at that time: It was McEachern's own proposition to value the same at $621.50, but in drawing the paper I made it $521.50, as that was ample security, and this was the amount consigned to him by me on behalf of my firm at said time." And McEachern testified on his examination in chief for the plaintiffs that at the time he signed the agreement, copied above, the shoes on hand bought of plaintiffs were worth $521.50, and not over that sum; that he had no other shoes in stock except them; that he sold the stock of shoes, together with his entire stock of merchandise, on November 6th, 1892, to W. H. Crawford, the defendant, in payment of a debt due him and other debts assumed by him, and that the shoes thus sold to Crawford were worth $407.97. On cross-examination, McEachern stated that he bought the bill of goods as claimed by plaintiff, and had paid $315 on account thereof, leaving a balance due at the time of making said agreement of $306.50; that "the bill of goods was bought 'straight' by him; that he never made any order to plaintiffs for goods to be shipped on consignment; that no bill of goods was ever so shipped by plaintiffs to him, and that no bills received were marked 'consigned.' That nothing was said by Buck while at Dothan about taking any inventory of the shoes then on hand, nor did he make any move towards taking such inventory. That as Mr. Buck was leaving Dothan he came to his (witness') store and asked him if he had any objections to signing the agreement marked 'Exhibit C' in Buck's deposition; that he read the same and told him 'No,' and then signed it, and that was all that was said and done at the time." McEachern further testified that he did not inform Crawford of this agreement; that he did not remit to plaintiffs the proceeds of the sale of any of said shoes, nor did plaintiffs ever call on him for such proceeds until after he had sold to the defendant. It was shown that the shoes sold to Crawford were worth $400, and that the consideration paid by Crawford to McEachern was valuable, fair and adequate, and had been paid in good faith by Crawford, without notice of plaintiffs' claim to the prop-

erty. On these facts, the trial court gave the affirmative charge for the plaintiffs, and refused defendant's request for such instruction in his favor.

The question thus presented obviously turns upon the inquiry whether the transaction of September 21st was a sale of the bill of shoes by McEachern to the plaintiffs. The title, as we have seen, was then in the former as fully for all purposes as if the property had not been originally purchased from Spraggins, Buck & Co. at all, but had been acquired from some other wholly independent source. The transaction, therefore, amounted to this: McEachern, because of the fact that he owed Spraggins, Buck & Co. a debt, agreed to hold certain of his property as the property of the latter as if it had been consigned to him by them for sale on their account, to sell the same in the course of his merchandise business, and to account to them for, and pay over the proceeds of, its sale. The contract fixes the value of this property at $521.50, or, at least, it is described therein as "a bill of shoes to amount of five hundred and twenty-one and 50-100 dollars," and it is identified by evidence *aliunde* as consisting of shoes which had been sold by Spraggins, Buck & Co. to McEachern and which were then in his store in Dothan and constituted his entire stock of shoes. On the face of the paper, therefore, with this oral evidence, the value of the property is fixed and its identity is made to appear. But the paper contains no word of barter or sale nor any stipulation as to the price paid by Spraggins, Buck & Co. to McEachern; there is no recitation of the payment of any price, and no promise to pay any price to McEachern for his goods thus to be thereafter held and sold by him as the consignee and agent of Spraggins, Buck & Co. McEachern then owed them $306.50, and this indebtedness, it is shown, was the cause moving the parties to enter into the arrangement; but it does not appear either by the paper or the other evidence that the satisfaction of this debt was the consideration of the alleged sale, nor indeed that this debt was or has ever been satisfied at all. To the contrary, the testimony given *ore tenus* on the trial—and there appears to have been no objection to any of it—goes to show that the recital of $521.50 as the value of the goods had reference to the balance of the debt from McEachern to Spraggins, Buck & Co., being

reduced to that sum by the $100 paid to Buck on the 16th of September, no account being taken of the $15 paid to Booth, and it not then being known probably that the check for $200 had been or would be paid; and that this amount was stated, not because it was the real value of the goods, for no inventory was taken, nor because this sum was in any way to be paid or allowed as credit to McEchern, but because, in any event as to the payment of the check, it was sufficient to cover the balance of the debt *and to secure its payment.* Buck testifies, as we have seen, that "in drawing the paper °I made it [the value] $522.50, as that was *ample security.*" He also says that it was McEachern's own proposition to value the goods in this paper at $621.50, but for the reason stated, he, the witness, changed this to $521.50. This proposition to McEachern to value the property at $621.50 is wholly inexplicible on the theory that title passed by the transaction into Spraggins, Buck & Co., for, if so, it would have been the voluntary assumption of the burden by him to account and pay to the latter a sum greatly in excess of the value of the property with which they were then dealing; but it is consistent with the idea that the parties only intended the contract to operate as a security for the debt which he owed them, for in such case the valuation would be immaterial, and, whether great or small, McEachern would have to pay only the balance of the debt.

The plaintiffs having shown the circumstances under which the agreement was executed,—it being indeed necessary for them to go outside of the paper, at least for the purpose of identifying the property,—it was open to the defendant to show, if he could, that some of the essential elements of a sale by McEachern to plaintiff were lacking, and facts imputing to the arrangement the elements of the creation of a mere lien for the security of a debt, amounting to an equitable mortgage, especially since the action is in trover, which is equitable in its nature and open to equitable defenses. The evidence does tend to show, as we have seen, that the title was not in the plaintiffs, but that they, by virtue of the agreement acquired only a lien on the property to secure the payment of a debt. The jury had a right to find in accordance with this tendency of the evidence, and if they so found, and further believed that the defendant

was a *bona fide* purchaser of the property from McEachern for value and without notice of said lien, their verdict should have been for the defendant. The case of *Thornton v. Cook et al.* 97 Ala. 630, so much relied on by counsel for appellees, is not authority in support of the giving of the affirmative charge for plaintiffs in the court below. In that case there was a formal bargain and sale of the goods by the debtor to the creditor in payment of the debt; and the very existence of this pivotal fact in the present case was for the determination of the jury.

The judgment of the circuit court must be reversed. The cause will be remanded.