## In re CULLMAN FRUIT & PRODUCE ASSN.

(District Court, N. D. Alabama, N. D.    August 8, 1907.)

### No. 1,242.

1. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—DELIVERY UNDER SALE CONTRACT.

Where machinery, sold and shipped to a corporation to be paid for in cash, was delivered without such payment, at its request and promise to send a check, which was not done, and afterward the seller's agent settled the claim by taking negotiable vouchers for the price secured by collateral, the title to the machinery passed to the purchaser, at least on such settlement, and on its subsequent bankruptcy to its trustee.

2. CORPORATIONS—CONTRACTS—POWERS OF PRESIDENT.

A contract, signed by the president of a corporation, by which it purported to lease from the seller property which had previously been sold and delivered to it, and which provided that the title should remain in the seller, is ineffective to reconvey such title, where it was not authorized by the board of directors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1612, 1621.]

In Bankruptcy.    On petition to try title to personal property.

The Cullman Fruit & Produce Association having been adjudicated a bankrupt, the Sprague Canning Machinery Company files this petition, asking that this court direct the receiver to turn over to them certain personal property found in possession of the bankrupt at the time of the filing of the petition, alleging the same to be the property of the petitioners; the facts in relation to the issues being as follows: On or about the 14th day of May, 1906, certain machinery to be used in a canning factory was shipped by the Sprague Canning Machinery Company, a corporation of Illinois, to the Cullman Fruit & Produce Association, a corporation in Alabama. This shipment was made on an order received from the Cullman Association on the 14th day of May, and provided for the shipment on June 1, 1906; the sale being for cash. The shipment was made, with bill of lading and draft attached; but it was not

shown whether the bill of lading was in the name of the Sprague Canning Machinery Company or the Cullman Company. After the goods arrived at Cullman, Ala., the Cullman Association wired the Sprague Company to release the car and they would send check. Upon receipt of this telegram the Sprague Company, relying on this promise to send the check, wired the railroad to let the Cullman Company have the goods, and the goods were in fact so delivered; but no payment was ever made by the Cullman Association for the goods shipped to them. About the 1st of August, 1906, after the delivery of the goods, an agent of the Sprague Company went to Cullman, Ala., and saw the president and manager of the Cullman Association, and asserted claim to the property, and made demand for the machinery or the money which had been promised therefor. The president of the Cullman Association admitted the claim of the Sprague Company and then gave the said agent two vouchers, drawn by the president on the treasurer of the company and payable at Parker's Bank, one for $215 and one for $1,000, in payment for the purchase money for the property. Said vouchers were payable August 15th and September 1st, respectively. At the time of the delivery of these "vouchers" (as they were designated by the witnesses) to the agent of the Sprague Company, there was also delivered to him by the president of the Cullman Association $1,200 worth of bonds to secure the payment of the drafts or vouchers. These bonds were secured by a mortgage on all the assets of the Cullman Association, and the fact was made known to the agent of the Sprague Company at the time he accepted the bonds. At the time of the acceptance of these vouchers and bonds by the Sprague Company the property was in the possession of the Cullman Association at Cullman, Ala., and was in use as part of its canning factory, being attached to the building by pipes. About the 5th of September, 1906, another agent of the Sprague Company went to Cullman to secure some sort of a settlement of the account between that company and the Cullman Company, and, failing to secure a satisfactory adjustment, a certain contract was entered into, which was signed in duplicate by the Sprague Canning Machinery Company, by its treasurer, and by the Cullman Fruit & Produce Association, by its president, to one of which was attached the seal of the Cullman Company, and to the other there was no seal. That contract was in terms a contract of lease by the Cullman Company from the Sprague Company of the identical canning property now in issue; the terms of the lease being that the Cullman Company agreed to pay as rental the identical sums of money as embraced in three notes, which were executed at the same time with this lease. These notes were never paid. It was further stipulated in the said lease that the Sprague Company would make a complete bill of sale to the Cullman Company of the property involved in this proceeding as soon as said notes were paid. No action was taken by the board of directors of the Cullman Company authorizing this lease, or in any manner ratifying the act of the president and manager in executing same; but the president of the Cullman Association represented to the agent of the Sprague Company, at the time the lease was signed, that he had ample authority to sign same. The Sprague Company, which was a corporation under the laws of Illinois, had never complied with the laws of Alabama for entering into business in this state.

Milton Humes and Paul Speake, for petitioner.
Shelby Pleasants and O. D. Street, for receiver.

HUNDLEY, District Judge (after stating the facts). The first question which confronts us, and, indeed, the controlling and decisive question, is: Did the title to the property in fact and in law ever pass from the Sprague Canning Machinery Company into the Cullman Fruit & Produce Association? It is contended by counsel for petitioner that the whole transaction, from start to finish, shows an intention not to part with the title until the purchase price was paid, and it is insisted that this intention, as disclosed by the testimony in this case, is decisive of the question at issue in favor of the pe-

titioner. There may be cases in which the intention only of the parties should govern, but such is not the case where the contract can be ascertained from the terms thereof and acts of the parties thereto. The intention must be gathered from the terms of the contract and the circumstances of the case. 6 Am. & Eng. Encyc. of Law (2d Ed.) p. 438. There is no doubt about the proposition that, where personalty is sold for cash on delivery, the payment stipulated for is a condition precedent, and, unless complied with, the seller may reclaim the property. "But even in such case, if delivery is made to the purchaser without presently demanding the payment thereof required by the contract, the condition precedent is waived and the title passes." Neal, Morse & Co. v. Boggan, 97 Ala. 611, 11 South. 809. Says the Supreme Court of Alabama in that case:

"Thus, in Leedom v. Phillips, 1 Yeates (Pa.) 527, the seller of a lot of sugar for cash on delivery left it in front of the, buyer's store in his absence. On the same day the buyer sold it, and, two hours later, failed. It was ruled, in replevin by the seller against the subpurchaser, that the condition had been waived and title had passed to the buyer. The court said: 'If one sells goods for cash, and the vendee takes them away, without payment of the money, the vendor should immediately reclaim them by pursuing the party.' So, in Bowen v. Burk, 13 Pa. 146, it is said: 'By an unqualified delivery, notwithstanding a cash sale, the seller relinquishes the advantage of possession and trusts to his action on the contract.' In Mackaness v. Long, 85 Pa. 158, it is said: 'Although the terms of a sale be cash, subsequent delivery without payment passes the property to the vendee, not only as to the rest of mankind, but against the vendor himself. If the vendee takes the goods away without payment, the vendor should immediately reclaim them by pursuing the party and retaking them; and this may be done, when necessary, even by force. The right of reclamation after delivery exists only in cases of fraud or deceit in the purchase, or in procuring the possession.' "

Now it must be noted that there is not the slightest testimony in this case tending to show any effort on the part of the petitioner to pursue the Cullman Company, immediately after delivery, for the purpose of reclaiming the goods. On the other hand, the telegram from the Cullman Company, requesting the release of the car and embracing promise to send check, bore date of June 26th, and not until August 1st following was any effort made by the Sprague Company to secure any adjustment of the matter with the Cullman Company, and even then no effort was made to reclaim the property, but to secure payment therefor. H. O. Crane, witness for the petitioner, testified that when he went to Cullman on the 1st day of August he "demanded the machinery, or the money which had been promised for it." Then and at that time what took place between the parties? The machinery was not delivered to the agent of the Sprague Company, but said agent accepted two vouchers of the Cullman Company, signed by its president and treasurer, and payable at the banking house of Parker & Co. (negotiable paper), and $1,200 in first mortgage bonds of the Cullman Company to secure these vouchers. The agent of the Sprague Company was advised, at the time he accepted this collateral, that the mortgage to secure these bonds covered all the real estate and machinery of the Cullman Company. Even granting, for the sake of argument, that, when the machinery was delivered on the promise of the Cullman Company to send check, on its failure to do so the

title at that time still remained in the Sprague Company, which we do not admit (see Blackshear v. Burke, 74 Ala. 239), can there be any doubt, as matter of law, under the facts and circumstances of this case, that the title passed from the Sprague Company to the Cullman Company, when the agent of the former company accepted in payment for the machinery negotiable vouchers; secured by the bonds, on or about August 1st? We think not, and we feel compelled to hold that, if the title did not pass when the property was delivered to the Cullman Company on its promise to send check, it did in fact pass at the time of the acceptance of the vouchers and bonds. A case directly in point with this view, and which is sustained by ample authority, is that of Tatnall et al. v. Rome F. & M. Works, 98 Ala. 532, 13 South. 271. In that case certain goods were ordered by mail and shipped as ordered, with invoice to the purchaser; but the bill of lading, with draft for price, was sent to the bank for collection and payment refused by the purchaser, who submitted an offer to pay in 30 days, which offer was accepted by mail, and the purchaser sent his note, which was never paid. It was held that the sale was completed by the vendor's acceptance of the buyer's offer. So, in the case at bar, the goods were ordered by mail, and shipment was made with 10-day draft and bill of lading attached. The vendee declined to accept the goods on these terms, and proposed instead to send check after delivery. This proposition was accepted by the vendors, and the goods delivered. The check not being sent as agreed, the vouchers and bonds were afterwards given and accepted.

The petitioner directs attention to the case of Montgomery Iron Works v. Smith, 98 Ala. 644, 13 South. 525, and insists with considerable vehemence that that case is decisive of the proposition, and shows conclusively that the agent Crane's act in taking the two vouchers, with bonds as collateral security, was not a waiver of the Sprague Company's retention of the title. A careful reading of that case will show conclusively that it differs from the case at bar in one very material element. In that case it was stipulated expressly, in a written contract made at the time of the purchase, that all payments made before default in the payment of the notes should be treated as payment for the use of the machinery. The contract also provided that, upon default in the payment of any of the notes, the vendor might take possession of the property or might sue on all of the notes, if it saw proper; but it was reiterated in the contract that the title should remain in the vendor, and should not become vested in the vendee, until all of the notes were paid. There were no such conditions as these made or contemplated in the original written contract of sale. As we have before said, this contract was made by ordinary correspondence through the mail. The goods were simply ordered by letter, and they were shipped, with bill of lading attached and accompanied with a 10-day draft. This contract of shipment, which was accepted by the Cullman Company, does not attempt in the slightest manner to set out on its face any reservation of title to the goods. Nor are we able to glean from the testimony in this case, at the time the telegram was sent to the Sprague Company requesting the release of the goods and the promise to send check, that there was any

reservation of title on the part of the Sprague Company, or a recognition of any reservation of title by the Cullam Company, in case the check should not be paid. There is no evidence before this court, either in the testimony or the correspondence passing between the parties, that at the time of the purchase it was expressed that the title should remain in the vendors. In fact, at the time of the acceptance of the vouchers and bonds the witness Crane testifies that President Fealy of the Cullman Company expressed a willingness to sign any necessary documents showing that the title to the machinery should remain in the vendors until paid for; but no such document was signed or demanded by the vendors, and the reason given by the witness Crane as to why such document was not signed was because "at that time it was only a few days until those checks were to be paid, and we left the machinery as it was, waiting the payment of those checks."

It being the opinion of the court, for the reasons stated and upon the authorities above cited, that the title to the machinery passed into the Cullman Company, the remaining questions, as to the right of the Sprague Company to engage in business in Alabama, and the validity of the mortgage given by the Cullman Company to secure its bonds, and the effect of what purports to be a lease executed by that Company to the Sprague Company, are questions only remotely connected with the controlling question in this case. The lease purporting to have been executed on the 7th day of September, 1906, if executed by authority, was admissible only in consideration of the question of the intention of the parties, in connection with the terms of the contract and the circumstances of this case. Then, if that lease could be construed as a valid lien upon the property of the bankrupt, it would not at this time be necessary for this court to pass upon the effect of that lien in its relation to the mortgage given to secure the payment of the bonds, for all such questions will necessarily be determined and settled, as provided under the bankruptcy law, in the final distribution and settlement of the bankrupt's estate.

It must not be forgotten that the burden of proof in this case is upon the petitioner to establish its title to the property in controversy. This we are compelled to hold it has failed to do. The title having vested absolutely in the Cullman Company, the lease bearing date of September 7th could have no force or effect for reïnvesting the title in the Sprague Company—first, because it does not purport to be and is not in fact an instrument seeking to convey the title from the Cullman Company to the Sprague Company; and, second, if it were such instrument, it could not be effective for this purpose, because it was not executed by the authority of the corporation. "It is a generally recognized principle of the law that the president of a corporation or its general manager, without authority of its board of directors, cannot make a valid conveyance or assignment of the property of the corporation." Norton v. Alabama Nat. Bank, 102 Ala. 420, 14 South. 872. It is true that, where an instrument is under the seal of the corporation, it purports authority; but the proof in this case affirmatively shows that there was no resolution of the board of directors authorizing the execution of the paper. American Savings & Loan

Ass'n v. Smith, 122 Ala. 505, 27 South. 919; Sampson v. Fox, 109 Ala. 671, 19 South. 896, 55 Am. St. Rep. 950. The act of Fealy in signing the so-called lease was simply the act of an agent of the corporation, acting without the scope of his authority; his act having no force or effect in so far as it involves the issues now presented. Neither his act in signing this lease nor his declarations in relation thereto were evidence to bind his principal, the Cullman Company, because there was no independent proof of his authority to bind that corporation in the act performed. Postal Telegraph Co. v. Lenoir, 107 Ala. 640, 18 South. 266; Buist v. Guice, 96 Ala. 255, 11 South. 280; Talladega Ins. Co. v. Peacock, 67 Ala. 253; Galbreath v. Cole, 61 Ala. 139. The authorities are practically unanimous upon the proposition that one who deals with an agent does so at his peril. The law places him upon notice that he must ascertain for himself whether or not the agent is acting within the scope of his authority. Cummins v. Beaumont, 68 Ala. 204.

It follows, therefore, that the petition of the Sprague Canning Machinery Company cannot be sustained; and it is therefore ordered, adjudged, and decreed, that the same be, and is hereby, dismissed out of this court. It is further ordered, adjudged, and decreed that the costs of this proceeding be, and the same are hereby, taxed against the estate of the bankrupt.